Good morning. Will you please record? My name is Philip J. Klosius, and I represent the appellants Richard Dent and nine other former professional football players. With the court's permission, I would like to reserve three minutes for rebuttal. Your time. Thank you. The factual allegations at heart of this case involve a disconnect between the face of the NFL and the shadow reality that supports it. Article 39 of the Collective Bargain Agreement is clear that the health care responsibilities are placed on the club, and that the NFL has no duties or obligations of health care to the players under the CBA. However, as pled and presumed to be true, the NFL controls and directs a pyramidal scheme for the distribution of controlled substances and prescription drugs in flight or disregard of federal and state law. The NFL's attempting to use the words of the CBA to shield its legal activity. Sounds like a legal case to me. Your Honor, it may be, except we only have one defendant here. I understand. We only have one defendant here. I'm sorry. We only have one defendant here. I believe RICO requires more than one defendant. Sometimes you have a legal case that's not a legal case because there's not enough defendants. Exactly, Your Honor. It's a similar thing. It's a pyramidal conspiracy. You're plating it as a tort case, right? It's a tort case? Correct. Intentional and legal. So the question is whether or not the standard of care is derived from the CBA. Your Honor, where does it come from? We don't reference the CBA. We will never use the CBA. We are not involved with any duties under the CBA. As I just said, the NFL has none. Article 39 is clear that the NFL has no duty or obligation to health care under the CBA. The major issue for this court to decide, which is where the standard of care comes from, is did the district court err when it held that the illegality exception to 301 preemption only applied to state statutory claims? This illegitimate illegality exception was created by the Supreme Court and Alex Chalmers. It was, again, referenced in the leading preemption case that lays Sergey Lagrimer versus Consolidated Freightways. In neither of those two cases, and in no cases that we know of, has this distinction been made. As far as we can tell, the district court made its Swiss Monday. In fact, the Ninth Circuit has repeatedly implied this illegality exception to common law tort claims. State law also. In Lagrimer versus Consolidated Freightways, the allegations were a breach of invasion of privacy under the California Constitution and a common law claim for intentional inflation of emotional distress. In Burnside versus Keywood, again, we had two state law claims and a common law claim for conversion. In Ward versus Circus Circus, we have all tort claims, Your Honor, in addition to negligence. In Galvez versus Kuhn, we have. I'd like to work down to your causes of action, see if I can simplify this just a little bit. You have nine causes of action. Three of them, as far as I can tell, actually are remedies. Which is the declaratory relief, the medical monitoring, and the loss of consortium, which is number seven. Those are really at issue here. Your Honor, they're not at issue. We've narrowed down to six things. A couple of those sound in negligence, but you have a couple of them also that sound in fraud. I'm sorry. Yes, Your Honor. I just want to make sure I'm right. I've got several that sound in negligence and a couple that sound in fraud. There are three that we would consider traditional negligence, and then there are three uninstituted to per se. The other is fraud, the other is fraudulent concealment. You should be super intentional towards the equivalent thereof. Okay. In the Evans case, the judge also said that the claims against the clubs were not preempted. Correct. And then distinguished that case from this case in part by saying that in this case, these were negligence claims. That's the characterization that seems to me to be wrong. Let me hear you again, Your Honor. Okay. So if you've got, again, important claims, don't those fall outside of the CBN? Aren't those different from the negligence claims? Your Honor, we think all of them fall outside the CBN, but the stronger case is clearly with negligence per se, fraud, fraudulent concealment. Okay. Is that what you're asking? Let's go to the negligence, the pure negligence cases, and tell me why they don't survive. Negligence, the elements for negligence per se are fraud. We're not talking negligence per se now. We're talking negligence. Oh, I'm sorry. I thought you asked me. He did, but he, as I understand the question, and I guess he can correct me if I'm wrong, as I understand it, he was saying negligence per se is one thing, but I want to now go to the negligence claims. That's what I heard. I misunderstood. I'm sorry. On the counseling, I don't quite hear the question. The negligence claims are, again, based on a fairly simple historic theory. Duty, negligence, misrepresentation, negligent hiring, and negligent pretension, fraud. Tell me why those survive. Because the duty at issue is to obey the law. Again, the illegality exemption applies here. It applies to common law claims. Evans confirmed that. It held him to a linchpin in a near-complaint. I'm sorry, what did he say? He held him to a linchpin in a near-complaint. When I read your complaint, it seems to me that negligent hiring, negligent retention, negligence claim itself do not hearken back to a violation of the law, but instead hearken to a common law duty. Your Honor, the duty to obey the law is alleged in paragraph 345 and paragraphs 370 to 380. And it does come from a common law duty, Your Honor. It's very much below section 301 of the law. I mean, anytime you claim a breach of duty of the collective bargaining agreement, it says that you also have a duty to follow the law. Your Honor, I'm not sure how that can possibly add to your claim. If the underlying action is illegal, it can't be validated by a clause in the CBA. A CBA can't make legal action illegal. What we're trying to do is determine if there's a distinction, if you will, between your common law claims, which you allege in everything, except the negligence per se claim. Not only do you allege the negligence per se, but you list the statutes breached. When you get to the other parts of your complaint, you do not. You just say there's a common law duty which arises, and the common law duty which arises is what we're really talking about. I don't see that's alleged from a statute. If it is, it's part of the negligence per se. It's just a common law duty that might have been breached. Your Honor, in the complaint, there are three duties that are alleged. One is to obey the code of law. The other is reasonable care to prevent foreseeable damages, and the third is the duty to use due care in hiring and retention. The last one is to reward. The other two are the restatement. The last two do apply only to the negligence claims. Not the negligence per se, not the fraud and the fraudulently consuming. But in defining the duty under those two standards, the duty that incorporates the illegal activity, Well, let's talk about hiring. It's a provision, right? What does that duty cover? The common law. The NFL is involved in the hiring process by directing its Why is that covered by the collective bargaining agreement? The collective bargaining agreement says the NFL has no duties or obligations under the health standard. And the hiring in the collective bargaining agreement is placed on the clubs. But this is a world where what's said is different from what happens. That's what we've alleged. The pyramidal scheme exists outside the collective bargaining agreement. The bargaining agreement says one thing. It says the NFL is not involved in any of this stuff. The reality is, is the NFL is directing and controlling the legal distribution of the drugs in a classic pyramid scheme. And, Your Honor, what happens in a classic pyramid scheme is everybody bleeds somebody else. Right? The NFL says it's the club's duties, the club says it's the doctor's duties, the doctor says it's the trainer's duties, and then the trainers go right back up again. That's why pyramid schemes have existed for thousands of years, Your Honor, because they confuse duties, they confuse responsibilities, and everybody's got plausible denial of someone else. This complaint is asking you to see through that and to allow us to hold responsible the people who have controlled and directed this scheme for 45 years. From 1969 until 2012, the applicable time during the complaint, hundreds of club doctors and hundreds of club trainers have acted illegally and in violation of their ethics. The NFL would like you to believe that every one of those people independently arrived at that conclusion on their own. Our suggestion is that's just a classic pyramid scheme justification. The reality is that this has been directed continually by the NFL for profit, for getting players back on the field, allowing us to have Thursday night games, the box tower stars. It's all dependent on this distribution of drugs illegally. Without that, they can't do it. You have another five minutes. Thank you, Your Honor. Do you want to say anything, or do you want to proceed? I'll say three more questions. It's okay to hear that. I'm sorry. I just want to say five minutes. If it's to my view, you can take as long as you want. Thank you. I'll tell the next officer to go. Let me get back to what you just said. If we go to negligent hiring, you say it's not derived from the CBA. It's a state common law claim. But under Caterpillar, my next question, then is this claim substantially dependent on the analysis of the CBA? Court versus circuit. Circuit's the answer to that question. Negative, Your Honor. It said that you have a negligent hiring claim if the employer is not teaching its hires not to file a claim. It was a solid battery claim. It was a security claim. So your answer is more correct. Your Honor, it's a district court error. If not, holding this illegality exception applicable to our common law claims, which changed in Evans v. Arizona, which is the correct result. Once the illegality exemption is applied, the rest of the duties flow to obey the law. You then just follow the drugs. Your Honor, we understand that we either have to prove our case or we can't ever reference the collective bargaining agreement. We have no intention at any point here to reference the collective bargaining agreement. If we can't prove our case or if we can only prove it based on the bargaining agreement, we are free to argue preemption at any point in time, including after a jury decision. So we are only asking here for the right to discovery. We're asking for the right to get to the heart of the matter and find out who, in fact, is responsible for the illegal distribution of drugs that's occurring on a daily basis in the national football league. Thank you, Your Honor. Court is adjourned. Okay, can we hear from the other side? Your Honor, it's Paul Clement from the FLEs. As the district court correctly concluded, the plaintiff's common law claims are precluded under Section 301 because they all require interpretation of the CBAs that provide the critical link between the plaintiff's and his case. This is unusual in that for most of these agreements, the NFL is not a party to the CBA. Usually in Section 301 cases, the question is, here's a party whose rights are covered by the CBA, who affect it, who set standards of set. But as I understand it, six out of the seven agreements, the NFL is not even a party, right? That's right, Your Honor, but I don't think that fundamentally changes the analysis in the following respect. When we're not talking about somebody who's a stranger to the collective bargaining process, the league, overseas, the 32 clubs, there is a multi-employer bargaining unit that really is reflective of the clubs. So it's not like they sued me and I'm like a stranger to this whole process and then they probably wouldn't be able to bring their claim, their clues on the merits, but there wouldn't be a branching basis. They're clearly suing a defendant and are leapfrogging over the most obvious defendant for what they're complaining about. And I don't think that's... You can't sue the one, you know, you leapfrog over the one you're not allowed to sue whatsoever. They leapfrogged over the one they clearly can't sue, but they still managed to land on somebody they can't sue either. And let me explain why. I mean, first of all, remember the context here. You have unionized employees who are complaining about the fact that they were given legal substances, they say, or prescription drugs, without a prescription by what they just said were club trainers and club doctors, employees and patients of their employer. Now in that context, if they were to sue their employers, I would think it would be pretty obvious for negligence or fraud or embezzlement. I think it would be pretty obvious that we have to interpret the collective bargaining agreement. You don't solve that problem if you essentially name as the defendant kind of the super employer. And the reason is, there are a couple of reasons why that's the case. First of all, in allocating the duty, in trying to allocate a common law duty to the NFL and not the clubs, you have to confront the reality that there's a collective bargaining agreement that assigns that precise responsibility to the clubs. But that would be an argument to sue the wrong party. And that's a different kind of claim than one that says all of this is preempted. I don't think that's right, Your Honor. I mean, I agree. It's maybe both at the end of the day that they sued the wrong party. But in order to allocate the responsibilities, and also remember, you've got to show proximate causation. In order to figure out whether or not that party is responsible, you have to look into the duties that are assumed by the clubs. What do we do with the allegation in the complaint that the NFL directly gave drugs to athletes? Well, I think what you do is you read it in the context of the entire complaint. So, with respect to every one of the 10 plaintiffs, the specific allegations are that they were given injections by the team doctors, the doctors. I'm looking at paragraph 17 of the complaint. This is the second one in the complaint. The NFL directly. I'm going to put some olympsies in here. The NFL directly supplied players with opioids. Right. I think that. But this is a little incredulous to me. It seems to me that they've alleged that, and if they can prove that, I don't see why that's preempted by that CBAP. Well, again, I mean, look, if they want to isolate their whole complaint to being the direct distribution of opioids by the NFL, not through the club trainers and the club doctors, I mean, I think what they would then perhaps have is a claim that just is fanciful. But I don't think that's a fair reading of what they actually alleged in their whole complaint. If you take it as a whole, and I think if you go back and you. I think this is where you're going, but they're not exactly alleging, this is definitive, they're not exactly alleging that they used the club doctors, but why does the fact that they used the club doctors put this under the contract? Because then under a negligence claim, you would have to understand the duties of the league, and you would have to figure out whether they really had a duty to provide. I mean, now at the end of the day, the idea that the league had a duty to provide written prescriptions for all of this, when they're being directly administered by the team doctors and the team trainers, I don't see how you could say that you could understand whether that duty was really allocated to the league without interpreting the collective bargaining agreement. I don't see how you could determine how there is proximate causation and what the league did when you have a collective bargaining agreement that specifically says that it's the doctor's decision to use proper medical care. It's the. Okay, sure. No, I think they take that as a given. So the collective bargaining agreement says the doctors have certain duties. And then across the thing, there's this outside force that is causing the doctors to breach their duty. And we're not showing the doctors the racial integrity. We're showing this outside force for causing the doctors to do these terrible things. Why is that governed by the collective bargaining agreement? Because ultimately in understanding what, under the common law, the duty of the league is to the players. Well, let's put it in smaller terms. Let's say, for example, that a, and I make this up, of course, that the wife of one of the players wants to poison him. Again, I'm not going to try to give you any alleged truth, but let's posit that as a hypothetical. And so she decides she's going to get one of the team doctors and get one of the team doctors to inject the player with poison, rather than whatever it is that he normally is. And at that, you know, after this happens, the player then sues the doctor. I'm sorry, not the doctor. Sues the wife or whoever this person is on the outside. Is that governed by the collective bargaining agreement? I don't think that is, Your Honor. I think that's more like. How is this different? Because they are not suing a random defendant. They are suing the, essentially, the super employer. And in that context, the super employer, the first thing the super employer is going to say is, what are you talking about? All this responsibility is allocated thoroughly on the team and the team doctors. See, the wife would say, look, the responsibility of the doctor was to give him medicine, not poison. So, you know, I. But I do think they're different. And again, maybe this gets to the point. Maybe there is. I know you think that. But please don't destroy me. Well, I'm going to try, Your Honor. I think they're materially different in a couple of ways. First of all, with respect to sort of the poisoning. Maybe there's, you know, a non-negotiable duty on everyone not to poison somebody. So you can sue the wife directly. In this context, what they really want to talk about are not the negligence claims. You know, Emily, she's hypothetical. You just avoid, you know, having an easy out. Let's say the wife says, you know, my husband is a laggard. And if he just got some steroids and this kind of stuff is given to him, he'd be a better player, make more money. I could sue him. You know, I could divorce him for a time of settlement. So she goes to the team doctor and says, you know, just pump him up. So that when he goes out, he will knock himself out and, you know, do a better job. Okay. So let's say that's what happens. You know, is there any theory in which the wife would be able to erase the Section 301 and the LMO? Section 301. I don't think there is. But I do think it is different when you sue somebody who is integrally involved in the collective bargaining process, whether or not they're a signatory. And I can give you an analogy. And talk to us a little bit more, because I don't quite understand. I mean, it's because I'm not so familiar with football. What is the role of your client in the collective bargaining process? Well, so. Because as a contractor, you cannot hire. No, no, I understand that. But the collective bargaining takes place principally between the NFL Players Association and a multi-employer bargaining unit that is made up of all the NFL teams. So it's technically, you know, an entity that's separate from the league. But the bargaining is really taking place essentially at a league level between the NFLPA and the Multi-Employer Bargaining Association. As part of an LMO. Yes, exactly. And so as part of that back and forth, they assign certain responsibilities to the club, certain responsibilities to the players, sometimes certain responsibilities to a third party. And so the idea in that context. Because I'm not sure of the NFL. Well, there might be certain things that are allocated at the league level, to be sure. And certainly things like, for example, roster sizes, game schedules, that's being determined at a league level. No, no, I'm sorry. I don't mean to suggest that the NFL doesn't do anything, and obviously it does a lot. The question is, what is their involvement in the collective bargaining process? And how are they, you know, you say, well, they're different from the wife because they're a super employer. I don't see the term super employer anywhere in the documents. It's just something you've mentioned. I mean, is there something in the process or the documents that puts the club in a better position than the official's wife? I think there is, which is to say it's just essentially the mirror image. It made me think. What do you say to persuade me that there is? It's essentially the mirror image of the multi-employer bargaining unit that's doing all these negotiations. And, I mean, if you think about this. I understand the concept of mirror image. There is, in fact, a multi-employer bargaining unit here. Yes. It's the club association, whatever it's called, right? It's the management committee. Thank you. Okay. So, what does mirror image mean, and how is that? If I'm the mirror image, am I failing to understand the connection? The league is an association of 32 teams. The 32 teams directly employ the players who are or did employ the players who are the plaintiffs here. I do understand the structure. I do understand how these players interrelate. What I don't understand is what status or function does the NFL have in the collective bargaining process? They do a lot of things, but they don't do everything, right? There's lots of stuff they don't do. And how, you know, you would say use the term super-employer. They're different. How? The contracts don't have a reference. Well, as you mentioned, the last CBA actually does mention that, you know, sort of in hot verb, but the reason that it doesn't is because the leagues operate through, you know, essentially through the teams as to not just, you know, wages, not just due to the way that they operate, but as to the specific complaint of what's going on here. And it seems to me that you would be sort of making a reality to say, Oh, well, the league is a complete stranger to the CBA. In the 2011 CBA, the NFL has actually made a bargain expressly. Right. Okay. So Article 39, and I'm looking at Section 3D, says nothing in this article or any other article, this is the medical section, shall be deemed to impose or create any duty or obligation on either the league or NFLPA regarding diagnosis, medical care, or treatment of any players. So given that the CBA says, denies that the NFL has any responsibility to the players, how can the CBA preempt an action against them? I think they would help to prove a state law of duty. But this section just says, yeah, well, it certainly isn't going to come from the CBA because we just said the NFL has no responsibilities for medical treatment of any player. Well, a couple of things, Your Honor. First of all, you're going to have to interpret the scope of that provision of the CBA to make that conclusion. So right there, you're interpreting the CBA. You would reinforce that conclusion by looking at, well, to the other provisions that have been in the CBA from the beginning. And you would say, of course, there's no duty on behalf of the league because all of the things they're complaining about are more directly assigned to the teams and the trainers than the doctors. And I do want to get to the point out before my time expires that as to the fraud claims, I think they're even more obviously preempted because one of the common law elements of fraud is to show reasonable or justifiable reliance. Well, how in the world is it reasonable to rely on some omission or some statement of the league when you're operating in a unionized employment situation where there are teams that are giving you advice about the exact same things more directly, and the agreement gives you the conflicted bargain right to get a medical opinion. So the idea that they would reasonably rely on what the league told them about the medications or that there was some sort of stringing duty on behalf of the league when the conflicted bargaining agreement itself assigns responsibilities and gives rights that would, I think, make that reliance completely unreasonable. Counsel, I have to say that I was really scratching my head after I read the evidence decision because the same district judge, military judge also took that case and said, well, obviously a suit against the clubs is not preempted. And you just think after having read this that I'm super sure any suit brought against the appropriate party who actually are administering the drugs and who are bound in the clubs who are bound by this would be preempted. But he said, well, the difference is that in debt, they're just negligence claims. They're not just negligence claims. There are fraud claims. Those are intentional torts, not negligent torts. But as I just said, it makes me wonder whether Judge Alsup didn't have the courage of his convictions in the debt case. I think if you give Judge Alsup his due, at least in the debt case, I think what he said is he did a thorough analysis of the negligence claims. Then he turned to the fraud claims, and he said exactly what I just said, which is the fraud claims are even more obviously preempted because you have to have reasonable or justifiable reliance. And you can't do that in this context without interpreting the CBA. And by the time he turns around in evidence and uses his shorthand for what he decided, I think he, you know, maybe at one point he said they're all negligence. At another point he talked about them as being common law. But in all events, his shorthand may have been a little too short. But I think that that analysis correctly analyzes all of these claims. Now, personally, I think he got it wrong in evidence. But I think, though, that he perceived this as being even more obviously preempted because I think he perceived this case as being a little like the Supreme Court heckler's case, where when you don't sue the employer for something that is obviously the employer's duty under common law, but you sue somebody less intuitive. In that case it was the union. Here it's the league. The place you would look for the assignment, the reassignment of the duty that would naturally belong to the employer. It's the collective bargaining agreement and the other terms that bind those parties together. And that's why I do think any way you look at this, you're going to come back to a need to interpret the collective bargaining agreement. If I could beg the Court's indulgence for 30 seconds and just say, I don't think the negligence per se claims are any different because under California law, first you have to show an applicable sanitude. And the statute here directs the responsibilities on physicians, on registrants. The NFL is none of those things. So you have to allocate responsibility for those duties. It sounds like a 12 v. 6 argument. It doesn't sound like a preemption argument. I think it's both because I don't see how you can allocate that responsibility. I don't think this is like Kramer, where nobody could sort of reassign the responsibility to put a surveillance camera in. There's nothing problematic under federal law for the league to say, as to these registration requirements and everything, that's your responsibility over there and you'd be interpreting that. Also, the second element of negligence per se is proximate cause. And how you can figure out that it was the league's violations here that proximately caused the injury without interpreting the CPA and looking at who else had responsibilities. I think Bayer's belief in negligence per se just establishes a presumption of negligence. Anyways, you still have to show the underlying duty. Thank you to the courts indulgence. Thank you. Thank you, Your Honor. About a month ago, we were provided with the perfect example for this case. The Harvard Law School and the Harvard Medical School published a report questioning whether doctors in the NFL were conflicted. Who responded to the report? Jeff Miller, Vice President, NFL. Not the clubs. If that report contained intentional fraud or negligent fraud, do we really think that a provision in the collective bargaining agreement would stop someone from reading a lawsuit based on the voluntary actions dictated in responding to the Harvard claim? Of course not. It's outside the CPA. Your Honor, the CPA is clear. There's no provision on point dealing with these drugs at issue. The responsibilities are on the club, and the NFL has no clear obligation. There's nothing to be intertwined with. There's nothing for our claims to be interpreted with. Do I understand it correctly that we'd have to create a circuit split to come out your way? No. That's not true, Your Honor. There is strong argument throughout the circuits that illegal conduct is not to be used for 301 preemption. But every NFL case has come up that way, right? Not every NFL case, no, Your Honor. That's a reasonable amount, then. Brown vs. the NFL, Sundance, New York. Signed by Judge Lynch. I'm sorry, I haven't told you about the cases. None of them have a legitimacy, Your Honor. None of them have an allegation of illegal conduct. And again, Judge Alsop just missed it in that this whole idea that it doesn't apply to common law claims is just wrong. It's against the precedent. Your Honor, I'll respond then to Mr. Coleman's argument that he made at the end, which I was going to ask you about where you responded before, on the negligence per se. Your Honor, he suggests, I mean, I don't need to say what his argument is to you, because I'm sure you very well understand it. So give a response to that argument. Why would negligence per se then not be preempted based on what he said? Your Honor, the four elements of negligence per se, is there has to be a violation of the statute, the violation has to cause the injury, the injury has to be one the statute decided to prevent, and the plaintiffs have to be in a class that the statute intended to protect. We fit all four. We fit all four. It's a class. But how about approximate cause? What are you going to say to that argument? Approximate cause, Your Honor? It's directly relevant. We determine if it's the approximate cause. If we don't look at the CBA, Your Honor, the approximate cause is the distribution the judge convokes causing the injury. And if there is that question, that's 12B6. That's getting into the facts, Your Honor. That's not dealing with what you're saying, 12B6. Correct. I understand. Your Honor, I would also disagree with Learned Counsel. The case law and the law reviews are clear that preemption is not appropriate with regards to intentional torts. It's more appropriate with regards to negligence. We can see it from the very beginning that the intentional torts are our strongest argument. The negligence are the weaker argument. The NFL and Judge Alsop were obsessed with the negligence claims, Your Honor. I mean, it's just the intentional claims and less than a page. It's the intentional claims that are at the heart of this claim. And, Your Honors, you understand these claims are not grouped together. You're obviously free to preempt some of these and not preempt others. If you wanted to preempt the negligence claims, you can, and the intentional ones continue. It's not that they're all grouped and all six of them rise and fall together. They're all separate. Your Honors, we're asking simply for discovery. Right? If you rule, if you affirm this decision, our case is done. If you don't, if you reverse Judge Alsop in full or in part, we only get discovery. There's minimal prejudice to the NFL here. If we're wrong, they can bring it up at any time. If we can't prove our claims, if we don't have it, they can bring it up at any time. The prejudice is not a consideration in making this decision. I think justice should always be a consideration. I understand justice, but all we're trying to do is look at what the law is and apply it. The prejudice, I appreciate your argument, but I didn't find anything that suggests that ought to be something I ought to be looking at in determining preemption. Your Honor, we therefore pray that you reverse the district court in full or in part and grant us discovery, the 10 appellants and the 1,300 other former players who were signed up for the PUDA class have a right to know who did this to them. Thank you very much. Thank you. Thank you. Thank you. Thank you.
judges: Kozinski, Bybee, N.R. Smith